Mack M. BRALY, Roberta Braly Cart-
wright, Dorothy Jane Givens, Hazel Mae
Owens, Jeanice Ely, Mary Stone Harris,
Wayne E. Pitt and Marle Pitt, husband
and wife, Joe Meek and Juanita Meek,
husband and wife, William Neal Legate
and Ollie H. Legate, husband and wife,
Harvey G. Huckeby and Phyllis Ruth
Huckeby, husband and wife, Robert L.
Kelley and Alta Jean Kelley, husband
and wife, Zack L. Latham, and Lois H.
Atkinson, Appellants,

v.

Harvey CODY, Conservation Attorney of
the Corporation Commission of Oklaho-
ma, and Arkansas Louisiana Gas Compa-
ny, Appellees.

Mack M. BRALY, Harvey G. Huckeby,
Zack L. Latham, Joe Meek, Roberta
Braly Cartwright, and Robert L. Kelley,
Appellants,

v.

Harvey CODY, Conservation Attorney of
the Corporation Commission of Oklaho-
ma, and Arkansas Louisiana Gas Compa-
ny, Appellees.

No. 49822.

Supreme Court of Oklahoma.

Nov. 15, 1977.

Rehearing Denied March 29, 1978.

George W. Braly, Braly & Braly, Stone-
wall, for appellants.

Harvey Cody, Conservation Atty. of the
Corp. Commission; Robert J. Emery, Lytle,
Soule & Emery, Oklahoma City, for appel-
lees.

WILLIAMS, Justice.

This is an appeal from two orders of the
Corporation Commission dismissing two ap-
plications for relief. Since the applications
concerned the same basic factual situation
and many of the same applicants, the caus-
es (CD 44187 and CD 44359) were combined
for purposes of appeal to this Court. CD
44187 had been heard before a Trial Exam-
iner of the Commission, whose recommen-
dation to deny the requested relief was
pending before the Commission; CD 44359,
filed later by some of the same applicants,
was awaiting hearing when motions to dis-
miss were filed in both causes by the Con-
servation Attorney. A motion to dismiss
had also been filed by Arkansas Louisiana
Gas Company (hereinafter called Arkla)
which was in effect the respondent in both
causes. After hearings on the motions to

dismiss on May 28, 1976, the Commission dismissed both causes on May 28, 1976 and June 2, 1976, respectively, after which applicants appealed to this Court.

Applicants in both causes were some of the surface and mineral-interest owners in six adjacent sections of land in Pontotoc County, Oklahoma, and both applications sought relief against a certificate issued by the Commission on October 28, 1973 in Order No. 100276 in Cause No. CD 36553, under the Underground Storage of Gas Act, 52 O.S.1971, Sections 36.1 through 36.7.

Those sections of the statutes, enacted in 1951, provide procedures by which a natural gas public utility company, such as Arkla, may acquire the power of eminent domain for the purpose of condemning a subsurface stratum or formation for the purpose of underground storage of natural gas. Under certain limitation set out in Sec. 36.3, the Commission is authorized to issue the certificate under Sec. 36.4, after a public hearing pursuant to notice "served in compliance with notice in civil actions in the district court" and published notice in the county where the land lies. Thereafter, under Sec. 36.5, the public utility may institute condemnation proceedings, attaching the required certificate to the petition for condemnation filed in the district court. That section also specifically provides that "The court or the judge thereof shall examine said petition and determine whether the petitioner has the power of eminent domain and whether said property is necessary to its lawful purposes". After affirmative findings by the trial judge on these two points, the condemnation action proceeds as in an ordinary condemnation action.

In 1973, after proceedings under Sections 36.1 et seq., Arkla acquired the necessary certificate as to the Upper Cromwell Sand Formation underlying about 1330 acres in six adjacent sections of land in Pontotoc County.

In December, 1975, Arkla filed its petition in the District Court of Pontotoc County, attaching the described certificate, and on April 1, 1976, began condemnation proceedings thereunder. On May 28, 1976, some of the surface and mineral-interest owners filed an application for this Court to assume original jurisdiction and issue a writ prohibiting the trial judge from proceeding in the condemnation action. This application was denied on October 18, 1976.

The two applications for relief before the Commission which led to the appeal now before this Court were filed on April 19, 1976 (CD 44187) and May 7, 1976 (CD 44359). In CD 44187, applicants asked for a "rehearing" of the 1973 proceedings in which Arkla was granted the certificate. In CD 44359, some of the same applicants asked that the 1973 Commission order granting the certificate to Arkla be "repealed", alleging that "economic and technological factors" had changed since the 1973 order.

As we have previously noted, both applications were dismissed upon motions by Arkla and the Conservation Attorney, after which the applicants appealed to this Court.

The record before us shows that in both causes, the applicants depended, among other things, upon the fact that two surface interest owners, apparently owning a total of about 6¾ acres, were not properly served with notice of the 1973 proceedings which led to the certificate granted to Arkla. They take the position that because of lack of notice to these owners, the 1973 proceedings were invalid as to *all* the surface and mineral-interest owners, including those who admittedly had proper notice. The record also shows that counsel for Arkla specifically admitted, in effect, that no proper service was had upon the two owners previously mentioned, and that, as to them, Arkla did not acquire the power of eminent domain in the 1973 proceedings.

In their briefs in this Court, the parties, in addition to the question of the propriety of the orders of dismissal entered by the Commission, have argued various questions of a constitutional and statutory nature. We find it unnecessary to consider these latter questions because, in the final analysis, they all go to the question of whether, in the district court proceeding in Pontotoc County, the petitioner, Arkla, does or does

not have the power of eminent domain. As we have seen, Sec. 36.5 quite specifically confers upon the district court or judge thereof the power and jurisdiction to determine that question.

In his motions to dismiss, the Conservation Attorney alleged in effect that (1) the Commission did not have jurisdiction to consider the particular applications, and (2) that an insufficient notice of the pendency of the applications was given by applicants.

On the jurisdictional question, applicants rely upon Rule 26(b) of the Commission, and 52 O.S.1971, Sec. 112.

Rule 26(b) of the Commission provides, in pertinent part, that "At any time subsequent to ten days after entry of an *order*, an application to vacate, alter, amend or change the *order* . . . filed by any party . . . shall be treated as a separate proceeding and shall be governed by the rules applicable to the commencement of a proceeding." (Emphasis added).

We note in passing that the Underground Storage of Gas Act authorizes the Commission to grant a *certificate* after proper proceedings. The fact that the Commission, for administrative and record-keeping purposes, grants the certificate in an instrument denominated as "order" is immaterial. Also, it is too well settled to require citation of authority that the power and jurisdiction of the Commission must be found in constitutional and statutory provisions, and cannot be enlarged in rules adopted by the Commission. In that connection, the applicants argue that 52 O.S.1971, Sec. 112, authorizes the Commission to grant the relief sought in the two applications.

We do not agree. Section 112 was enacted as a part of the Proration Act of 1933. See Oklahoma Session Laws, 1933, Chapter 131, Sec. 29. In 1935, the title of the 1933 act was changed to Oklahoma Oil and Gas Conservation Act; see 52 O.S.1971, Sec. 81. The procedural provisions of the 1933 act, including Sec. 112, were continued in force.

In various acts enlarging the power and jurisdiction of the Commission since 1933, our Legislature has specifically incorporated the procedural requirements of the 1933 act, including Sec. 112. For instance, the Conservation Act of 1947 included a provision that the act "shall be subject to all of the procedural requirements contained in Section 84 to 135, inclusive, Title 52, Oklahoma Statutes, 1951"; see the section now codified as 52 O.S.1971, Sec. 86.5. Similar "incorporating" language may be found in the Water Pollution Act of 1955 (52 O.S. 1971, Sec. 141); the Unitization Act of 1951 (52 O.S.1971, Sec. 287.6); and the Abandoned Wells Act of 1965 (52 O.S.1971, Sec. 316). However, no such language is found in the Underground Storage of Gas Act. The conclusion that the omission was intentional and not merely inadvertent is supported by the fact that the Unitization Act of 1951, which *did* include "incorporating" language, was enacted by the same legislature, and became effective on the same day, as the Underground Storage of Gas Act.

We therefore hold that the Corporation Commission correctly ruled it was without authority to consider the applications which sought to question the action of the Commission in granting the certificates under the Underground Storage of Gas Act in the 1973 proceedings.

In view of that conclusion, it is unnecessary to consider the allegations in the Conservation Attorney's motions to dismiss that insufficient notice of the pendency of the applications was given.

The orders of the Commission dismissing the applications in CD 44187 and CD 44359 are affirmed.

HODGES, C. J., LAVENDER, V. C. J., and BERRY, BARNES and DOOLIN, JJ., concur.

IRWIN, J., concurs in result.